UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSE GERMAN AVELAR,

               Plaintiff,

     - against -

J. COTOIA CONSTRUCTION, INC., its agents
and/or employees, and PERMANENT MISSION
OF THE PEOPLE'S REPUBLIC OF THE
CONGO, f/k/a GOUVERNEMENT DE LA
REPUBLIQUE DU CONGO BRAZZAVILLE, its
agents or employees,

               Defendants.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-2172 (RRM)(MDG)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff commenced this action by the filing of a summons and complaint in the Supreme Court of the State of New York, County of Queens, against defendant J. Cotoia Construction, Inc. ("Cotoia") to recover damages for injuries sustained at a worksite in Westchester County. Plaintiff subsequently added the Permanent Mission to the United Nations of the People's Republic of the Congo f/k/a Gouvernement de la Republique du Congo Brazzaville ("Congo Mission") as a defendant. In November 2010, following an inquest, the state court awarded plaintiff a default judgment against Congo Mission in the total amount of $486,553.97.[1] *Avelar v. J. Cotoia Constr., Inc. et al.*, No. 7162/2009 (Sup. Ct. Queens Cnty. Nov. 17, 2010). Plaintiff then levied against Congo Mission's real property and bank accounts. On May 4, 2011 Congo Mission removed the action to this Court by the filing of a notice of removal (Doc. No. 1).

      Presently before the Court are Congo Mission's motions to vacate the state court default judgment, and the subsequent executions of that judgment, and to dismiss the action for lack of

---

[1] The judgment reflects an award of $375,000 for past pain and suffering, $100,000 for future pain and suffering, an additional sum of $10,423.97 in interest plus costs and disbursements of $1130.00, for a total award of $486,553.97.

personal jurisdiction, under Federal Rules of Civil Procedure 60(b) and 12(b)(5) respectively. For the reasons set forth below, defendants' motions are GRANTED in their entirety.

## BACKGROUND

Defendant Congo Mission is the diplomatic body from the People's Republic of the Congo accredited to the United Nations to represent the interests of that nation to the United Nations. (*See* Decl. of Ambassador Raymond Serge Balé (Doc. No. 8) ("Balé Decl. I") ¶ 2, May 18, 2011; *United States v. Kostadinov*, 734 F.2d 905, 908 (2d Cir. 1984)). Congo Mission, as owner of a site in Bronxville, New York, hired Cotoia as a contractor to perform demolition work. Cotoia subcontracted with National Waterproofing Systems LLC, plaintiff's employer. Plaintiff was injured while performing work at the Congo Mission site. (Notice of Removal Ex. A (Compl.) (Doc. 3-3), ¶¶ 1, 4–5.)

### I. Proceedings in state court

Seeking to recover for those injuries, plaintiff brought an action for damages in the Queens County Supreme Court pursuant to New York Labor Law §§ 200, 240, 241, and 241-a, naming Cotoia[2] and, later, Congo Mission as defendants. In July 2009, plaintiff delivered English language versions of the state court summons and complaint to a receptionist at the Congo Mission premises, located at 14 East 65th Street, Manhattan. (Notice of Removal, Ex. C (Doc. No. 3-4) (Aff. of Service); Balé Decl. I ¶ 6(a).) Congo Mission never filed a timely answer. However, as the litigation progressed, plaintiff, Cotoia and Cotoia's insurer forwarded various discovery materials by mail to Congo Mission. (Pl.'s Reply to Congo Mission's Resp. in Opp'n to Pl.'s Mot. to Remand (Doc. No. 11) ("Pl.'s Remand Reply") at 5–6.) In October 2009, plaintiff notified Congo Mission by letter that if it did not answer, plaintiff would move for a default judgment. (Pl.'s Letter Mot. to Remand (Doc. No. 6) at 5.) Congo Mission received the

---

[2] Plaintiff subsequently settled with Cotoia. *Avelar*, No. 7162/2009, Short Form Order dated Oct. 27, 2010.

letter and Ambassador Raymond Serge Balé, Head of Mission, replied later that month, explaining that he did not believe Congo Mission to be liable. (Balé Decl. I ¶¶ 7–8; Supplemental Decl. of Ambassador Raymond Serge Balé (Doc. No. 18) ("Balé Decl. II") ¶ 10, Aug. 31, 2011). In late October 2009, plaintiff mailed a notice of default motion to Congo Mission. (Pl.'s Remand Reply at 5.) Between late 2009 and December 2010, plaintiff mailed various litigation documents to Congo Mission, including the note of issue and copies of the state court default judgment. (Pl.'s Remand Reply at 5–6.) Congo Mission did not answer or otherwise appear in the state court action. (*See, e.g.*, Pl.'s Remand Reply at 11, 14; Balé Decl. I ¶¶ 7, 10; Remand Hr'g Tr. at 8, Sept. 8, 2011.) Other than Ambassador Balé's October 2009 letter indicating he did not believe Congo Mission to be liable, Congo Mission took no action in response to any of the materials mailed.

In November 2010 the state court awarded plaintiff a default judgment against Congo Mission in the amount of $475,000. The judgment was docketed and recorded in February 2010. Between February 2010 and May 2010, plaintiff took steps to enforce the judgment, including the filing of judgment liens against Congo Mission properties and the attachment of Congo Mission bank accounts at Citibank, which attachments remain in effect to date. (Pl.'s Remand Reply at 4; Hr' Tr. at 7, 18, 23).

  II.  **Removal to this Court**

In May 2010, defendant Congo Mission removed the state court action by filing a notice of removal in this Court. (Doc. No. 1.) Plaintiff moved to remand. (Pl.'s Letter Mot. to Remand at 1.) The parties submitted briefs on the issues of removal, remand, and service of process under the Foreign Sovereign Immunities Act, §§ 1602 *et seq*. ("FSIA"). (*See id.*; Congo Mission's Resp. in Opp'n to Mot. to Remand (Doc. No. 7); Pl.'s Second Letter Mot. to Remand

3

(Doc. No. 10); Pl.'s Reply in Supp. of Mot. to Remand (Doc. No. 11).) The United States, although not a party to the instant litigation, filed a statement of interest pursuant to 28 U.S.C. § 517,[3] contending that plaintiff's service of process upon Congo Mission, including service of the default judgment, and plaintiff's subsequent enforcement of the judgment against Congo Mission property, violated the FSIA, and international law. (Stmt. of Interest of U.S. (Doc. No. 14) at 11–13, 15–16.) The Court gave the parties the opportunity to respond to the United States, which they did by filing supplemental memoranda. (*See* Pl.'s Reply Mem. in Opp'n to Stmt. of Interest of United States (Doc. No. 15); Congo Mission's Supp. Mem. in Opp'n to Pl.'s Mot. to Remand (Doc. No. 17); Pl.'s Reply in Opp'n to Congo Mission's Supp. Mem. (Doc. No. 20).) On September 8, 2011, the Court heard the parties and the United States on plaintiff's motion to remand, and denied the motion for reasons stated on the record.[4] (*See* Minute Entry dated Sept. 8, 2011 (Doc. No. 21); Remand Hr'g Tr. at 28–32.)

---

[3] Unless otherwise indicated, subsequent section references throughout this Memorandum and Order are to Title 28 of the United States Code.

[4] Specifically, the Court found that defendant was entitled to remove as a "foreign state" pursuant to § 1441(d). *See Gray v. Permanent Mission of People's Republic of Congo*, 443 F. Supp. 816, 820 (S.D.N.Y. 1978). The Court found also that Congo Mission's 30-day removal period never began to run because plaintiff never accomplished "formal service" on Congo Mission, as plaintiff did not comply with the FSIA's requirements for service of process on a foreign state. *See* § 1446(b) (30-day period); § 1608(a) (FSIA service of process); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 202 (2d Cir. 2001) ("[The removal period can] only be triggered by formal service of process, regardless of whether the [removal statute's] phrase 'or otherwise' hints at some other proper means of receipt of the initial pleading."); *see also* 14C Wright *et al.*, Federal Practice & Procedure, § 3738 (4th ed.) (court may entertain post-default removal, provided removal is otherwise timely); *accord Granville Gold Trust-Switz. v. Commissione Del Fullimento/ Inter Change Bank*, 924 F. Supp. 397, 402–03 (E.D.N.Y. 1996); *Gray*, 443 F. Supp. at 821. The FSIA's service requirements are at issue in the instant motion and are discussed *infra*. The Court found, moreover, that even if Congo Mission's notice of removal was untimely filed, it had shown good cause for enlargement of the removal period within the meaning of the removal statute. *See* § 1441(d) (allowing courts to enlarge the 30-day removal period specified in § 1446(b) on a foreign state's showing of good cause). As detailed on the record, the Court based its finding of good cause on Congo Mission's showing that: (1) removal would foster uniformity in the "law concerning foreign states," *Refco, Inc. v. Galadari*, 755 F. Supp. 79, 83 (S.D.N.Y. 1991) (citing H.R. Rep. No. 94-1487, at 27 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6631), particularly the law of levy and execution against the assets of foreign states; (2) Congo Mission did not participate in the state litigation, *cf. James v. Gov't of St. Lucia*, No. 08-CV-67(FB), 2008 WL 4410959, at *1 (E.D.N.Y. Sept. 29, 2008); (3) removal would not prejudice plaintiff as removal, standing alone, would not affect plaintiff's extant judgment, *see id.* at *2; and (4) as noted, service did not comply with the FSIA. *See generally id.* at *2 (factors governing "cause" for enlargement of removal period under § 1442(d)); *Hyundai Corp. v. Republic of Iraq*, No. 02-CV-7199 (RCC), 2003 WL 22251349, at *2 (S.D.N.Y. Sept. 30, 2003) (same); *Steadman v. Sinclair*, No. 96-CV-599 (DC), 1996 WL 257664, at *3 (S.D.N.Y. May 16, 1996) (Chin, J.) (same); *Refco, Inc.*, 755 F. Supp. at 83 (same); *Gray*, 443 F. Supp. at 819–21.

On October 3, 2011, Congo Mission filed the instant motion to (1) dismiss for lack of personal jurisdiction, and (2) to vacate the state court default judgment, all attachments, liens and restraints against Congo Mission's property stemming from the enforcement of that judgment.

**DISCUSSION**

**I.      Vacatur of the default judgment**

Pursuant to Federal Rule of Civil Procedure 60(b), "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment . . . [if] (4) the judgment is void." A judgment is void where personal service of the summons and complaint was not properly effected.[5] *Sartor v. Toussaint*, 70 F. App'x 11, 14 (2d Cir. 2002); *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 (S.D.N.Y. 1986). A void judgment cannot be enforced. *Sartor*, 70 F. App'x at 13; *Textile Banking Co., Inc. v. Rentschler*, 657 F.2d 844, 850 (7th Cir. 1981); *Popper v. Podhragy*, 48 F. Supp. 2d 268, 271 (S.D.N.Y. 1998); *Triad Energy Corp.*, 110 F.R.D. at 384; *see also Tex. Trading & Milling Corp. v. Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981) (holding that absent effective service, a court lacks jurisdiction over the defendant and all actions pertaining to such defendants, including the entry of default judgment, are void); *Gray v. Permanent Mission of People's Republic of Congo*, 443 F. Supp. 816, 821–22 (S.D.N.Y. 1978). As discussed below, plaintiff here failed properly to serve Congo Mission, thereby rendering void the state court default judgment.

**A.      Service under the FSIA**

The service provision of the FSIA, § 1608(a), is the exclusive provision by which a plaintiff in a civil action may effect service of process on a "foreign state." *See Daly*, 30 F. Supp. 2d at 416; *see also* Fed. Civ. R. Proc. 4(j) ("A foreign state . . . must be served in

---

[5] Contrary to plaintiff's contention, the one-year limitation set forth in Rule 60(c) does not apply to motions made under Rule 60(b)(4). *See* Fed. R. Civ. P 60(c); 11 Wright *et al.*, *supra*, § 2862 ("[T]here is no time limit on an attack on a judgment as void [pursuant to Rule 60(b)(4)]."

accordance with § 1608."). Section 1608(a)(1)–(4), fully set forth in the margin,[6] authorizes four methods of service: (1) service by prior agreement between the parties; (2) service in compliance with a convention to which the foreign state is a party; (3) failing both (1) and (2), service by the Clerk of Court; (4) failing (3), service by the State Department through "diplomatic channels." *See* § 1608(a)(1)–(4); *Gray*, 443 F. Supp. at 821 (summarizing methods). Courts unequivocally hold that § 1608(a) "mandate[s] strict adherence to its terms, not merely substantial compliance." *Finamar Investors Inc. v. Republic of Taj.*, 889 F. Supp. 114, 117 (S.D.N.Y. 1995); *see Gray*, 443 F. Supp. at 820; *see also Magness v. Russ. Fed'n*, 247 F.3d 609, 615 (5th Cir. 2001); *BPA Int'l, Inc. v. Kingdom of Swed.*, 281 F. Supp. 2d 73, 84 (D.D.C. 2003); *cf. Finamar Investors*, 889 F. Supp. at 117 (mere "substantial compliance" may suffice for service on an "agency or instrumentality of a foreign state" pursuant to § 1608(b)). FSIA governs service of process in state and federal courts alike. *See* § 1608(a) ("Service in the courts of the United States and of the States shall be made upon a foreign state [as follows.]"); *see also, e.g., Trans Commodities, Inc. v. Kaz. Trading House*, No. 96-CV-9782 (BSJ), 1997 WL 811474, at *4 (S.D.N.Y. May 28, 1997) ("[T]he FSIA . . . sets forth four possible methods of service to be used in a suit against a

---

[6] Section 1608, entitled "Service; time to answer; default" provides:
    (a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:
        (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
        (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
        (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
        (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.
    As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

foreign state in any court—state or federal—in the United States.") (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 491–97 (1983)).

## B. Purported service on Congo Mission

Congo Mission is a "foreign state" for purposes of the FSIA. *Gray*, 443 F. Supp. at 820; *Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Bots.*, No. 05-CV-2591, 2005 WL 1621342, at *3 (S.D.N.Y. July 12, 2005). Therefore, service on Congo Mission is governed by § 1608(a).

The various steps taken by plaintiff to apprise Congo Mission of the pendency of the instant litigation did not comply with the FSIA. Plaintiff delivered a copy of the state court summons and complaint to a receptionist working at Congo Mission premises, mailed various discovery and litigation-related documents to Congo Mission, and mailed a copy of the state court order awarding default judgment. Plaintiff does not claim these efforts were undertaken pursuant to any private agreement with Congo Mission. *See* § 1608(a)(1). The People's Republic of the Congo is not a party to the most commonly cited international convention, the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") – which in any event applies only to international service – and plaintiff does not contend his purported service complied with any international convention. *See* Hague Convention, art. 31, Nov. 15, 1965, 20 U.S.T. 361; § 1608(a)(2); *Lewis & Kennedy, Inc.*, 2005 WL 1621342, at *4; *Daly*, 30 F. Supp. 2d at 416; 13A Federal Procedure, Lawyers Edition § 36:418 (2011). Plaintiff did not effect service by the Clerk of this Court or the state court, or by the United States Department of State. *See* § 1608(a)(3)–(4). Thus, plaintiff did not comply with the FSIA service provisions, and the Court is without power to deem plaintiff's asserted compliance "in principle" sufficient to meet the strict standard of

7

adherence the statute demands. *See Finamar Investors*, 889 F. Supp. at 117; *cf.* Pl.'s Reply Mem. in Opp'n to Congo Mission's Mot. to Dismiss (Doc. No. 23) at 2–3. At most, Congo Mission had notice of the action, but "informal notification through channels clearly outside the obvious requirements of [the FSIA] cannot be substituted for those which meet the requirements." *Gray*, 443 F. Supp. at 821 (noting also that delivery of process to "[Congo Mission's] secretary" does not comply with the FSIA).[7] The United States, in asserting its diplomatic interest in this case, both as host nation to the United Nations and a member of that body, agrees that service was improper. (*See* Stmt. of Interest of U.S. at 8–13, 15–16.)

Therefore, as plaintiff failed properly to serve Congo Mission, the state court's default judgment is a nullity, as are all subsequent liens, attachments and restraints on Congo Mission property levied in execution of that judgment. 14C Wright *et al.*, *supra*, § 3738 ("The federal court . . . may reconsider a default judgment entered by the state court prior to the removal, if the removal notice has been filed within the time period specified in the removal statute."); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity. . . . [T]he enforcing court has the inherent power to void the judgment, whether the judgment was issued by a tribunal within the enforcing court's domain or by a court of a foreign jurisdiction.") *Granville Gold Trust-Switz.*, 924 F. Supp. at 402–03 (noting that court's prior vacatur pursuant to Rule 60(b) of state court default judgment for improper service under FSIA); *Gray*, 443 F. Supp.

---

[7] Although a foreign state defendant that expressly consents to a state-court forum, or answers and litigates in the state court, may be found to have waived FSIA service noncompliance, Congo Mission did not participate at all in the state court litigation, let alone answer, appear, consent, or waive its objections to service. *See, e.g., Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729–30 (2d Cir. 1998) (noting that Rule 12(h)'s waiver of defective service provision applies in FSIA service context); *Steadman*, 1996 WL 257664, at *3 (holding that foreign state cannot "have it both ways" by litigating extensively in state trial and appellate courts, and then removing to federal court, claiming that defective FSIA service tolled the 30-day removal clock); *see also* Balé Decl. I ¶¶ 7, 10; Pl.'s Remand Reply at 11, 14 (noting Congo Mission's lack of pre-removal participation); Remand Hr'g Tr. at 8.

at 821; *see also First City, Tex.-Hous., N.A. v. Rafidain Bank*, No. 09-CV-7360(JSM), 1992 WL 296434, at *1 (S.D.N.Y. Oct. 6, 1992) ("It is well settled that absent effective service [under the FSIA], a court lacks jurisdiction over the defendant and all actions pertaining to such defendants, including the [state court's] entry of default judgment, are void.").

For the above reasons, Congo Mission's motion to vacate the state court default judgment, and all actions taken by plaintiff to enforce that judgment, is GRANTED.

**II.     Validity of execution against Congo Mission assets**

Alternatively, even if plaintiff properly served Congo Mission under the FSIA, the Court nonetheless is constrained to vacate plaintiff's execution of the default judgment against Congo Mission premises and bank accounts, because those assets are immune from execution and levy. The Vienna Convention on Diplomatic Relations ("Vienna Convention") applies with equal force to missions accredited to the United Nations and the United States, with respect to immunity against execution and levy of mission assets. *767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire*, 988 F.2d 295, 297 (2d Cir. 1993); *see* Vienna Convention, arts. 22, 25, Apr. 18, 1961, 23 U.S.T. 3227; *see also* U.N. Charter art. 105, para. 2; Agreement Regarding the Headquarters of the United Nations, U.S.-U.N., art. V para. 4, June 26, 1947–Nov. 21, 1947, T.I.A.S. No. 1676; Convention on Privileges and Immunities of the United Nations, art. IV § 11, Feb. 13, 1946, 21 U.S.T. 1418.

Pursuant to Article 22 of the Vienna Convention, mission premises are "inviolable," and "[t]he premises of the mission, their furnishings and other property thereon . . . shall be immune from search, requisition, attachment or execution." Vienna Convention, *supra*, art. 22 §§ 1, 3. The "premises of the mission" means "buildings or parts of buildings and the land ancillary thereto, irrespective of ownership, used for the purposes of the mission including the residence of

9

the head of the mission." *Id.* art. 1(i); *see 767 Third Ave. Assocs.*, 988 F.2d at 298. Moreover, under Article 25 of the Vienna Convention, the United States is to "accord full facilities for the performance of the functions of the mission." Bank accounts used by the mission for diplomatic purposes are immune from execution under this provision, as facilities necessary for the mission to function. *Sales v. Republic of Uganda*, No. 90-CV-3972 (CSH), 1993 WL 437762, at *2 (S.D.N.Y. Oct. 23, 1993); *Foxworth v. Permanent Mission of Republic of Uganda*, 796 F. Supp. 761, 763 (S.D.N.Y. 1992); *Liber. E. Timber Corp. v. Gov't of Republic of Liber.*, 659 F. Supp. 606, 608 (D.D.C. 1987). A sworn statement from the head of mission is sufficient to establish that a bank account is used for diplomatic purposes. *See Sales*, 1993 WL 437762, at *2 (noting also that, to remain consistent with principles of sovereign immunity, reliance on the mission head's affidavit is necessary to avoid "painstaking examination of the Mission's budget and books of account"); *Foxworth*, 796 F. Supp. at 762; *Liber. E. Timber Corp.*, 659 F. Supp. at 610.

In the case at bar, plaintiff has levied and executed against Congo Mission bank accounts at Citibank, as well as Congo Mission premises and the home of Ambassador Balé. Ambassador Balé has submitted sworn affidavits stating that the bank accounts and properties are vital to operation of the Congo Mission, describing the specific mission-related uses to which the accounts and properties are put, and detailing the fruitless steps the Congo Mission has taken to arrange alternate financing through its country's department of finance. (*See* Balé Decl. I ¶ 13; Balé Decl. II ¶ 3 (stating that the bank accounts are used for paying bills and salaries of the Congo Mission, and their seizure renders the Congo Mission "virtually impossible to run"); *id.* ¶ 6 (stating that the Congo Mission is at risk of shutdown "if the lien against our bank accounts is not lifted"); Decl. of Ambassador Raymond Serge Balé in Supp. of Congo Mission's Mots. (Doc. No. 22-2) ¶¶ 6–10; Supplemental Decl. of Ambassador Raymond Serge Balé in Further Supp. of

Congo Mission's Mots. (Doc. No. 24-1) ¶ 3.) Ambassador Balé's sworn statements are sufficient to establish that the assets against which plaintiff has enforced the state court default judgment are used for diplomatic purposes, and necessary for Congo Mission to function, and the Court therefore finds that they are immune from levy and attachment. *See Sales*, 1993 WL 437762, at *2; *Foxworth*, 796 F. Supp. at 762; *Liber. E. Timber Corp.*, 659 F. Supp. at 610. For these reasons, Congo Mission's motion to vacate all liens, levies, restraints, attachments, and similar enforcement mechanisms plaintiff has undertaken to enforce his default judgment, is GRANTED.[8]

### III. Motion to dismiss for lack of personal jurisdiction

#### A. Standard of review

With respect to a Rule 12(b)(5) motion to dismiss, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (internal quotation marks and citation omitted); *see Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (noting the " 'requirement that jurisdiction be established as a threshold matter' " (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998))). "[T]he plaintiff bears the burden of proving adequate service." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298–99 (2d Cir. 2005) (citation omitted). The plaintiff must, "through specific factual allegations and

---

[8] The FSIA also prohibits judgment creditors from attaching or executing upon assets used for diplomatic purposes such as the bank account and mission premises here. *See* §§ 1609–1610; *Sales*, 1993 WL 437762, at *1–2; *Liber. E. Timber Corp.*, 659 F. Supp. at 610. Moreover, the FSIA requires that any steps taken by a judgment creditor to enforce the judgment must be pursuant to a court order authorizing the enforcement, independent of the judgment itself, and not merely the result of the judgment creditor's unilateral delivery of a writ to the sheriff or marshal. *See* § 1610(c); *Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F. Supp. 420, 423 (S.D.N.Y. 1987). Plaintiff's failure to procure an independent court order requires also that the enforcement mechanisms be vacated. *Gadsby & Hannah v. Socialist Republic of Rom.*, 698 F. Supp. 483, 486 (S.D.N.Y. 1988). However, The FSIA was enacted "subject to" existing international agreements, such as the Vienna Convention, and the Second Circuit has said that the FSIA is "inapplicab[le]" with respect to the validity of attachment or execution where an international agreement provides immunity. *767 Third Ave. Assocs.*, 988 F.2d at 297; *see also* § 1609. Accordingly, although the FSIA prohibits plaintiff's actions taken to enforce the default judgment here, the Court does not rest its Order to vacate the executions on the FSIA.

any supporting materials, make a *prima facie* showing that service was proper." *Kwon v. Yun*, No. 05-CV-1142 (GEL), 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006) (collecting cases). "Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) (citing *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997)). The court may "look to matters outside the complaint to determine whether it has jurisdiction." *Id.* at 387.

As described *supra*, plaintiff failed to serve Congo Mission, a foreign state, by one of the methods listed in the FSIA, and the Court finds therefore that plaintiff failed to acquire personal jurisdiction over Congo Mission, for substantially the same reasons requiring vacatur of the state court default judgment. *See* § 1608(a); Fed. R. Civ. P. 4(j). Also, as noted *supra*, Congo Mission did not answer or otherwise appear in state court, or waive its objections to the defective service. *See Gray*, 443 F. Supp. at 822. Therefore, Congo Mission's motion to dismiss for failure to acquire personal jurisdiction by service under the FSIA is GRANTED, and the complaint is DISMISSED without prejudice.

## CONCLUSION

For the reasons stated herein, it is hereby:

ORDERED that Congo Mission's motion to vacate the state court default judgment and subsequent executions is GRANTED. As such, the state court judgment in the amount of $486,553.97, entered in the Supreme Court State of New York, County of Queens against defendant Permanent Mission to the United Nations of the People's Republic of the Congo f/k/a Gouvernement de la Republique du Congo Brazzaville in the matter of *Avelar v. J. Cotoia Constr., Inc. et al.*, Index No. 7162/2009, together with all liens, levies, restraints, attachments, executions, and similar enforcement mechanisms undertaken to enforce that default judgment, are hereby VACATED; and it is

FURTHER ORDERED that Congo Mission's motion to dismiss this action for failure to acquire personal jurisdiction is GRANTED. As such, this action is hereby DISMISSED without prejudice.

The Clerk of Court is directed to enter judgment accordingly, and to close the file.

SO ORDERED.

Dated: Brooklyn, New York
       November 2, 2011

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge